# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Case No. 18-cv-03225-DDD-STV

NICOLE PEREZ and
KENNETH DURAN, for themselves and their minor daughter
ISABELLA DURAN,

    Plaintiffs,

v.

FCA USA LLC, aka FIAT CHRYSLER AUTOMOBILES;
and DOES 1 through 100, inclusive,

    Defendants.

## ORDER

This matter is before the Court on the Motion to Dismiss Pursuant to Rule 12(b)(2) and 12(b)(6) filed by Defendant FCA USA LLC ("FCA"). (Doc. 10.) Among other things, the motion contends that this Court lacks personal jurisdiction over FCA and that this case must therefore be dismissed under Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, the Court agrees.

### BACKGROUND

This case arises from a tragic accident in which Plaintiff Isabella Duran, who was three years old at the time, was asphyxiated by the power window of her grandmother's 2005 Chrysler Town & Country Minivan. Isabella suffered brain damage and was rendered quadriplegic. Plaintiffs bring this action against FCA and Does 1 – 100 for strict liability, strict liability – misrepresentation, negligence, breach of express and

implied warranties, violation of the Colorado Consumer Protection Act, and infliction of emotional distress.

Although the accident occurred in Colorado, it is undisputed that the minivan was not designed, manufactured, or originally sold in Colorado, and neither FCA nor its predecessor[1] has ever had any vehicle manufacturing in Colorado. The minivan was initially sold to Forest Lake Chrysler in Minnesota on February 10, 2005, and was then shipped on the same day to National Rent-a-Car in Indianapolis. Six months later, the minivan was sold to a dealership in Grand Rapids, Michigan without the involvement of FCA or its predecessor. Later in 2005, the minivan was purchased by an individual with no relation to this lawsuit. The record is murky as to the minivan's whereabouts after 2005, but there is no dispute that eventually the minivan was purchased by Isabella's grandmother in Colorado in 2014, again without the involvement of FCA.

Plaintiffs' Complaint alleges, and this Court accepts as true for present purposes, that "at all times relevant to this action, [FCA] engaged in the use, sale, labeling, marketing, promotion, servicing, and/or distribution of motor vehicles and/or vehicle parts in Colorado." (Doc. 20 at 3.) FCA has at least 24 affiliated dealers in Colorado, markets heavily in Colorado, and sells thousands of vehicles in Colorado. FCA also has partnered with the Lincoln College of Technology Denver Campus to train more technicians and mechanics to supply its Colorado dealers with staff trained to fix Chrysler vehicles, including the type of vehicle at issue in this case.

---

[1] The briefing describes in some detail how Chrysler Group, LLC ("Old Chrysler") went into bankruptcy in 2009 and sold its assets to a newly formed entity known as FCA US. For purposes of this Order, when the Court refers to FCA, it refers to its predecessors as well.

2

ANALYSIS

**I. Standard of Review**

Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant. *Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991). In order to defeat a motion premised on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing of personal jurisdiction. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). A prima facie showing is made where the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant. *Id.*

**II. Specific Jurisdiction**

To establish that the Court has personal jurisdiction over FCA, Plaintiffs must show that jurisdiction is "legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). Colorado's long-arm statute confers maximum jurisdiction consistent with due process, so "the inquiry becomes whether the exercise of personal jurisdiction over the defendant comports with constitutional due process demands." *Electronic Payment Sys. v. Electronic Payment Solutions of Am.*, 14-cv-02624-WYD-MEH, 2015 WL 5444278, at *3 (D. Colo. Sept. 16, 2015).

In order to exercise personal jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 323 (1945). The minimum contacts standard may be met by establishing general jurisdiction or specific jurisdiction. General jurisdiction requires

3

the defendant's contacts with the forum state to be continuous and systematic. Plaintiffs in this case do not argue that general jurisdiction over FCA exists in Colorado. *See Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) ("Since *International Shoe*, specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role." (internal quotations omitted)).

Plaintiffs instead argue that the facts establish the minimum contacts required for specific jurisdiction. The relevant test for specific jurisdiction encompasses two requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of or relate to the defendant's forum-related activities. *E.g., Old Republic Ins. Co. v. Continental Motors*, 877 F.3d 895, 904 (10th Cir. 2017); *In re Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir. 1996). Both requirements must be met. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

FCA's argument focuses on the second. It argues that Plaintiff's claims do not arise out of or relate to FCA's activities in the State of Colorado. In order for a court to exercise specific jurisdiction over a claim, there must be a connection between the claim and the defendant's activity in the forum State. *See Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Thus, "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 930 n.6.

FCA is correct. Plaintiffs' claims do not arise out of or relate to FCA's activities in Colorado. If the underlying injury would have occurred even in the absence of the defendant's forum-related activities, then the claim does not arise out of or relate to those activities. *Kuenzle*, 102 F.3d at 456-57 (citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271-72 (9th Cir. 1996)). That is exactly the case here. The minivan was manufactured in Canada and sold to a rental car company in Indianapolis in 2005. Nine years later, Isabella's grandmother purchased the minivan in Colorado from a party well removed from FCA. In between, the minivan had made its way through a series of sales from Indianapolis to Michigan to Colorado, all without FCA's involvement.

The forum-related activities Plaintiffs point to here—including FCA's "use, sale, labeling, marketing, promotion, servicing, and/or distribution of motor vehicles and/or vehicle parts in Colorado," (Doc. 20 at 3)—are unrelated to the injuries Isabella and her parents sustained or to the arrival in Colorado of the minivan that allegedly caused them. Those activities, therefore, cannot support specific jurisdiction over FCA.

Plaintiffs also briefly argue that their claims arise out of FCA's Colorado activities because the accident occurred in Colorado and the resulting injuries were sustained by Colorado residents. (Doc. 20 at 8.) But that argument "improperly attributes a plaintiff's forum connections to the defendants and makes those connections 'decisive' in the jurisdictional analysis." *Walden v. Fiore*, 571 U.S. 277, 289 (2014). As the Colorado Court of Appeals has held, allegations that the defendants committed torts against plaintiffs in Colorado, and that the harm from those torts was experienced in Colorado, is insufficient to establish minimum contacts for personal jurisdiction. *Giduck v. Niblett*, 408 P.3d 856, 864 (Colo. App. 2014) (citing *Walden*, 571 U.S. at 286).

Plaintiffs have not alleged facts which would support that their specific claims arise out of or relate to FCA's activities in this State. Accordingly, they have not established minimum contacts sufficient to support specific jurisdiction over FCA.

## CONCLUSION

For the foregoing reasons, the Court holds that it does not have personal jurisdiction over Defendant FCA USA LLC. The Court therefore GRANTS the motion to dismiss filed by FCA (Doc. 10), and this case is DISMISSED without prejudice.[2]

DATED: November 20, 2019.

BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

---

[2] Dismissal of the entire case is appropriate despite Plaintiffs' having named 100 "Doe" defendants. *See Fiore v. Walden*, 748 F.3d 1304 (9th Cir. 2014) (on remand from U.S. Supreme Court, directing district court to dismiss entire case based on lack of personal jurisdiction over named defendant despite remaining unnamed defendants); *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996 (courts generally recognize the ability of a plaintiff to use unnamed defendants, but only where "plaintiff provides an adequate description . . . sufficient to identify the person involved so process can be served").